Argued October 31, reversed and remanded November 29, 1921,
    argued on rehearing February 7, reversed and remanded April
    27, 1922.

# ILTZ v. KRIEGER.

(202 Pac. 409; 206 Pac. 550.)

**Appeal and Error—Court Retains Jurisdiction of Appeal Despite
Surety's Failure to Justify Within Prescribed Time.**

1. Under Section 550, subdivision 4, Or. L., authorizing appel-
late court, when a party in good faith gives notice of appeal, but
thereafter omits through mistake to do any act necessary to
perfect it, to permit an amendment or performance of such act,
the appellate court retains jurisdiction of an appeal, despite
the failure of the surety on appellant's appeal bond to appear for
justification within ten days after notice of exception to his quali-
fications, as required by Section 268, Or. L., if appellant later
complies with such requirement and all the formalities required to
furnish and file a proper undertaking were observed.

**Appeal and Error—Motion to Dismiss for Appellant's Noncompli-
ance With Statute Denied, Where not Filed Within Time Re-
quired by Court Rule.**

2. Under Supreme Court rule No. 23 (173 Pac. x), requiring
that all motions be filed within ten days after a party obtains
knowledge of the adverse party's failure to comply with the re-
quirements of the statute, a motion to dismiss an appeal for fail-
ure of surety on appellant's bond to justify within ten days after
notice of exceptions to his qualifications, as required by Section
268, Or. L., will be denied, where not filed until more than forty
days after movant had knowledge of appellant's noncompliance
with such statute; such default not being jurisdictional.

**Homestead—Title to "Property of the Estate Exempt from Execu-
tion" Vests in Deceased's Heirs Until Set Apart to Widow.**

3. Under Section 1234, Or. L., requiring the probate court to
set apart to the widow or minor children of deceased all the prop-
erty of the estate exempt from execution, homestead property,
title to which was in a husband who died intestate while Section
226, L. O. L., under which such property descended as if the ex-
emption granted did not exist, was in effect, descends to his heirs,
subject to his widow's right to have it set apart to her; "the prop-
erty of the estate exempt from execution" including the home-
stead of the family.

**Executors and Administrators—Probate Court's Jurisdiction to Set
Aside Exempt Property to Widow Continues Until Administra-
tion is Closed.**

4. The jurisdiction of the probate court, under Section 1234,
Or. L., to set aside exempt property to deceased's widow, continues
until the administration is closed, in the absence of sale or other
disposition placing it beyond the court's control.

Homestead—Widow may have Set Apart Residence Property Which was Actual Abode of Family, and Could have Been Selected as Homestead During Husband's Life.

5. Under Section 1234, Or. L., requiring the probate court to set apart exempt property to deceased's widow, the latter is entitled to have set apart residence property which was the actual abode of the family, and of the character and extent that could have been selected as a homestead during deceased's life.

Constitutional Law—Court cannot Place Conditions on Enjoyment of Statutory Rights not Expressly or Impliedly Found in Language of Statute.

6. The court cannot by construction place conditions on the enjoyment of rights granted by a statute which are not found, either expressly or by clear implication, in its language.

Executors and Administrators—Widow's Remarriage and Removal to New Husband's Home Does not Disqualify Her to have Exempt Property of Deceased Husband's Estate Set Apart to Her.

7. Under Section 1234, Or. L., a widow's remarriage and removal to the home of her new husband does not disqualify her to have set apart to her the exempt property of her deceased husband's estate.

Homestead—Widow Held not to have Waived Right to Homestead by Application for Third Interest in Fee.

8. Section 7286, L. O. L., as amended by Laws of 1917, page 687, section 1, providing that widow may take in lieu of dower the undivided third part in fee of the whole of such land, and that she shall be deemed so to have so elected unless she commence proceedings for dower within a year after deceased's death, an order of the probate court, on application of a widow, purporting to award to her a third interest in fee in her deceased husband's property, more than a year after his death, did not constitute an election to waive or renounce her right to a homestead, in the absence of proceedings for the assignment or recovery of dower within such time, title having passed to her before such order was made.

Estoppel—No Waiver of Legal Right Without Knowledge of Existence Thereof and Intention to Relinquish It.

9. Before the waiver of a legal right results, there must be both knowledge of the existence of such right and an intention to relinquish it.

Homestead—"Election" Defined.

10. "Election" is the obligation imposed on a party to choose between two inconsistent or alternative rights or claims where there is a clear intention of the person from whom he derives one that he should not enjoy both.

8. The question as to whether a widow's dower right in property allotted to her as a homestead is extinguished or merely in abeyance is discussed in a note in 10 L. R. A. (N. S.) 1206.

Homestead—No Intention to Elect Presumed, If Person, Though Knowing Facts, Acts in Ignorance of Obligation to Elect.

11. Since the doctrine of election depends not on technical rules, but on principles of equity and justice and actual intention, an election made in ignorance of material facts is not binding when no other person's rights have been affected, nor is an intention to elect presumed if a person, though knowing the facts, acted in misapprehension of his legal rights and in ignorance of his obligation to make an election.

Homestead — Doctrine of Election Inapplicable Where Estate in Fee Simple in Lieu of Dower not Intended as Substitute for Homestead.

12. Since the estate in fee simple which the widow of a decedent may elect to take in lieu of dower under Laws of 1917, page 687, applies to all the parcels of real property of the estate, while the exempt property of the estate which she is entitled to have set apart to her under Section 1234, Or. L., is restricted to one particular parcel, the homestead, the doctrine of election does not apply; the two rights not being alternatives or substitutes.

Homestead—Election to Relinquish not Presumed, in Absence of Knowledge of Right to Homestead, Intention to Relinquish, and Injury to Third Parties.

13. Though a widow, who remarried and removed to the home of her new husband applied to the probate court for a one-third interest in fee simple in her deceased husband's property in lieu of dower as permitted by Section 7286, L. O. L., as amended by Laws of 1917, page 687, Section 1, no election to waive or renounce her right to a homestead under Section 1234, Or. L., will be presumed, where she was ignorant of her right to a homestead, no intention to relinquish the same was shown, and no rights of third parties intervened.

## ON REHEARING.

Homestead—Homestead is Property of Widow.

14. Under Section 1234, L. O. L., providing that all property of an estate, exempt by law from execution, shall go to the widow of deceased to maintain her and her minor children, a homestead being exempt from execution by Sections 221–226, L. O. L., is the property of the widow.

Statutes—Homestead Exemption Statute Held not to Embrace a Subject not Expressed in Title.

15. Laws of 1893, page 93, as amended by Laws of 1905, Chapter 221, Sections 221–226, L. O. L., entitled an act "to exempt homesteads from attachment and judicial sale," does not amend the law of descent and vest title in the widow rather than in the heirs, and embrace a subject not expressed in the title, contrary to Article IV, Section 20, Constitution, because of the effect on a homestead of Section 1234, providing that all property of decedent exempt from execution shall go to his widow for her and her minor children, but the act operates as an exemption statute and nothing more.

From Multnomah: GEORGE TAZWELL, Judge.

In Banc.

Lot 9 in block number 17 in Lincoln Park, Portland, Oregon, was the actual abode of the family of Henry Iltz, at and for several months prior to his death on December 31, 1918. The family consisted of decedent and his wife, appellant herein. Title to the property at the time of his death was vested in decedent. Besides his widow, Henry Iltz left one or more adult children by a former marriage. Appellant continued to reside on the premises above described until July, 1919. At that time she married one Phillip Krieger and thereupon left the home formerly occupied by Henry Iltz and herself and took up her abode with Phillip Krieger in a home provided by the latter. On February 4, 1920, appellant petitioned the probate court for a one-third interest in fee in the property instead of her dower right therein and thereafter on February 12, 1920, an order was entered by the probate court granting her petition and directing the administrator of the estate of Henry Iltz, deceased, to pay to the petitioner one third of the rental value of the property each month thereafter. On May 8, 1920, appellant petitioned the probate court to set apart to her the above-described premises as a homestead. This appeal is taken from the order denying appellant's said petition. Respondent has interposed a motion to dismiss the appeal.

On motion to dismiss:

MOTION DENIED. REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Richards & Richards,* with an oral argument by *Mr. Oren R. Richards.*

For respondent there was a brief over the names of *Messrs. Carey & Kerr* and *Mr. Omar C. Spencer,* with an oral argument by *Mr. Marvin K. Holland.*

McCOURT, J.—The order from which this appeal was taken was entered on July 2, 1920. Notice of appeal was served and filed on August 30, 1920, and the undertaking on appeal was filed on September 8, 1920. Exception to the qualifications of the surety was filed on September 10, 1920. The surety appeared for justification on November 9, 1920, and upon examination before the court was found qualified and sufficient. Counsel for respondent appeared at the examination of the surety and objected on the ground that the time for justification of the surety had expired. The transcript upon appeal was filed in this court on November 22, 1920. The motion to dismiss the appeal was filed on January 8, 1921. Affidavits against respondent's motion to dismiss were presented by appellant, tending to show that the respondent was partly responsible for the delay of which complaint is made. It appears that appellant gave notice of appeal in good faith, and that she has prosecuted her appeal diligently. In support of the motion to dismiss, it is urged that Section 268, Or. L., limits the time within which a surety may justify, to not more than ten days after notice that exception has been taken to such surety, and that when the surety on an undertaking on appeal has justified after the expiration of that time, the cause is not brought within the jurisdiction of this court.

1. The effect upon an appeal of the failure of a surety to justify within the time prescribed by Section 268, Or. L., is declared by subdivision 4 of Section 550, Or. L.

In the case of *Miller* v. *Arenz,* 103 Or. 592 (193 Pac. 439), Mr. McBRIDE, Chief Justice, speaking for the court, said:

"The law does not permit an indiscriminate extension of time to file an undertaking, but, in its solicitude for the privilege of every litigant to have his case heard upon appeal, it allows him to correct such error as may arise from forgetfulness or even misconception of the procedure necessary to preserve his legal rights, if it appears that he has in good faith served and filed his notice of appeal, and attempted in like good faith to comply with the requirements of the statute as he understood them."

2. In the latter case it was held that the effect of subdivision 4 of Section 550, Or. L., is to take away the mandatory, jurisdictional character of those requirements upon appeal subsequent to giving and filing notice of appeal and to retain in the court jurisdiction of the appeal provided the party appealing complies later with some requirement omitted by mistake. The appellant offers to file a new undertaking and the statute authorizes this court to permit her to do so. It appears, however, that all of the formalities required to furnish and file a proper undertaking were observed by appellant. Complaint is made only of delay in the appearance of the surety for justification. Nothing would be gained by requiring a new undertaking, moreover rule No. 23 of this court makes the following provision:

"All motions must be filed within ten days after a party or his attorney obtains knowledge of an alleged failure of the adverse party or his attorney to comply with the requirements of the statute or with

the rules of this court, and unless so filed all defects, except objections to the jurisdiction of the court, will be taken as waived by the moving party."

The motion to dismiss in this case was not filed until more than forty days had elapsed after respondent had knowledge of plaintiff's failure to comply with the statute and as the default complained of is not jurisdictional, respondent waived the same. The motion to dismiss, therefore, is denied.

ON THE MERITS.

3. The statute granting a homestead to the family as it existed at the time of the death of Henry Iltz did not continue the homestead to the widow or minor children, but provided that the homestead property should descend as if the exemption granted by the homestead law did not exist: Section 226, Or. L.

The right of a widow to have set apart to her the homestead of the family for the maintenance of herself and the minor children, if any, is granted by Section 1234, Or. L. The homestead thus created is frequently spoken of as a probate homestead.

" * * In such a case the setting apart of such a homestead is a part of the probate proceeding as much as is a family allowance, and the manifest object of statutes providing therefor is to make provision for the support and maintenance of the family, these demands of the family being deemed superior to those of heirs or creditors * * ." 13 R. C. L. 688.

Where a family is in possession of real property that may be selected as a homestead, the title to which is in the husband and the latter dies intestate, the property descends to the heirs, subject to the right of the widow to have such homestead set apart to her by the probate court as provided by Section

1234, Or. L.: *In re Frizzell's Estate,* 95 Or. 681–688 (188 Pac. 707).

Section 1234, Or. L., as it existed at the time of the death of Henry Iltz, provided:

"Upon the filing of the inventory, the court or judge thereof shall make an order, setting apart, for the widow or minor children of the deceased, if any, all the property of the estate by law exempt from execution. The property thus set apart, if there be a widow, is her property, to be used or expended by her in the maintenance of herself and minor children, * * ."

The property of the estate exempt from execution, within the meaning of this statute, includes the homestead, if any, of the family, and when the probate court exercises its jurisdiction and makes an order setting apart the homestead to the widow, thereupon the fee-simple title thereto, vests in her: *In re Frizzell's Estate,* 95 Or. 687–689 (188 Pac. 707); *Wycoff* v. *Snapp,* 72 Or. 234 (143 Pac. 902).

The title that passes to the heirs on the death of the husband is not divested until the homestead is set apart to the widow by the probate court in conformity with the requirements of the statute. Title to the homestead as such does not vest in the widow in the absence of an order of the probate court setting the same apart to her, but remains in the heirs: *In re Frizzell's Estate,* 95 Or. 687–689 (188 Pac. 707); *Wycoff* v. *Snapp,* 72 Or. 234 (143 Pac. 902); *Estate of Boland,* 43 Cal. 642.

4. The jurisdiction of the probate court to set aside exempt property to the widow continues until the administration is closed, in the absence of sale or other disposition placing the property embraced in the homestead beyond the control of the probate court.

5. Under the statute the widow is entitled to have set apart to her, residence property which was the actual abode of the family during the life of the husband and at his death and of the character and extent that could have been selected as a homestead during the life of the husband: 13 R. C. L. 689.

The probate court decided, and respondent contends, that the action of appellant in leaving the home of decedent, remarrying and taking up her abode with her new husband, lost her the right to have a homestead set apart to her; also that the order of the probate court, made upon her subsequent application and purporting to grant to her a one-third interest in fee in the real property of her deceased husband, barred her claim asserted later, to have the whole property set apart to her as a homestead; that her conduct in the respect last mentioned constituted an election to relinquish her right to have the homestead set apart to her, and a waiver of her right thereto.

6. The statute does not make continued residence by the widow upon the property claimed as a homestead, a condition to the exercise of the duty of the court to make an order setting the same apart to the widow: neither does it provide that the remarriage of the widow shall cut off her right to have exempt property set apart to her. The court cannot, by construction, place conditions upon the enjoyment of the rights granted by the statute which are not found, either expressly or by clear implication, in its language.

7. The remarriage and removal to the home of her new husband, does not disqualify a widow, to claim and have set apart to her the exempt property of the

estate of her deceased husband, under Section 1234, Or. L.

8. It appears that the appellant was ignorant of her right to claim the real property of her deceased husband as a homestead when she applied to the probate court for a one-third interest in fee simple therein. Respondent contends that the order of the probate court, made upon the application of appellant, purporting to award to her a one-third interest in fee simple in the property, constitutes an election on the part of the appellant to waive or renounce her right to a homestead. The interest in the real property which was intended to be recognized by the order mentioned, was that defined by Chapter 331, Laws of 1917, and therein declared to be in lieu of dower.

Chapter 331, Laws of 1917, was an act to amend sections of the Code relating to dower and curtesy. Section 1 of the act amended Section 7286, L. O. L., to read as follows:

"Sec. 7286. The widow of every deceased person shall be entitled to dower, or the use, during her natural life, of one-half part of all the land whereof her husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof; provided, however, that any woman entitled to dower, may, at her election, take in lieu of such dower the undivided third part in her individual right in fee of the whole of the land whereof the husband was seized of an estate of inheritance at any time during the marriage, unless she is lawfully barred thereof. And provided further, that when a widow shall be entitled to an election under this section, she shall be deemed to have elected to take the undivided third of such lands unless within one year after the death of her husband she shall commence proceedings for the assignment or recovery of her dower."

The provision of the statute granting a widow a one-third interest in fee in the lands of her deceased husband did not require any action of the probate court to vest the title in the widow. The title passed by virtue of the statute, in the absence of proceedings for the assignment or recovery of dower, within one year after the death of her husband. Whatever rights accrued to appellant under this statute, had fully vested before the order of the probate court was made.

There is a conflict in the authorities as to whether a widow who has accepted her dower right in the real property of her deceased husband's estate or the distributive share thereof given to her by statute, is barred from thereafter obtaining a homestead therein. This conflict is accounted for largely, if not altogether, by the difference in the statutes of the several states.

" * * As a general rule homestead and dower are regarded as co-ordinate estates, based on the theory that, as the interests of the mother and children are identical, the two estates should be made as far as possible to coexist in the same property. * * " 13 R. C. L., p. 670.

Woerner on The American Law of Administration, Vol. 1 (2 ed.), Section 97, states the result of the judicial construction of the statutes of the several states as follows:

" * * In Alabama, Arkansas, Florida, Illinois, Massachusetts, Michigan, Missouri, Nebraska, New Hampshire, South Carolina, Tennessee, Vermont, Virginia and Wisconsin, the right of homestead is held to be cumulative to and independent of dower, so that a widow may have both; while in Iowa, Georgia, and North Carolina, she is put to her election to take one or the other, but is not entitled to both. * * "

To the same effect are Waples on Homestead and Exemptions, pages 614–620, and Thompson on Homestead and Exemption, Sections 555–566.

Missouri has a statute providing for setting apart a homestead to the widow and also a statute similar to the Oregon statute above set forth. These statutes have received consideration by the Supreme Court of Missouri in several cases much like the instant case, among which are the following: *McFadin* v. *Board*, 188 Mo. 688 (87 S. W. 948); *Gragg* v. *Gragg*, 65 Mo. 343; *Seek* v. *Haynes*, 68 Mo. 13, and *Chrisman* v. *Linderman*, 202 Mo. 605 (100 S. W. 1090, 119 Am. St. Rep. 822, 10 L. R. A. (N. S.), 1205 and note). In the case of *McFadin* v. *Board*, 188 Mo. 688 (87 S. W. 948), the widow had elected to take a child's part in lieu of dower in the real estate of which her husband died seized and the trial court found that she had no homestead interest in any of the real estate of which her husband died seized. BRACE, Presiding Judge, speaking for the court, page 691 of the opinion, said:

" * * * Without stopping to review the reasoning by which such a manifestly erroneous conclusion was reached, it is sufficient to say, that while that section does provide a way in which a widow's dower may, so to speak, be swallowed up in her homestead, it provides none by which her homestead may be swallowed up in her dower, and necessarily so, for the homestead is not only for the widow but for the minor children. * * * "

The case of *Gragg* v. *Gragg*, 65 Mo. 343, was one in which the widow accepted 48 acres that had been set out to her as dower, out of a tract of 164 acres, left by her deceased husband. Three years later in a partition brought by the heirs, she asserted her

claim to a homestead out of the same 164 acre tract.
The court at page 348 of the opinion said:

" * * But in this case there is no estoppel; there
are none of the elements of estoppel. Her conduct
deceived no one, and her success here will abridge
the rights of no one. The heirs will get all they are
entitled to under the law. Under the impression that
the homestead right would not be claimed, or that
the dower interest was all that the widow was
entitled to, they have invested no money, nor done
any act whatever to embarrass them, if she succeeds.
We do not say that the widow may not, by her
conduct, be estopped from asserting her homestead
right. We are satisfied that she may, and *Wright* v.
*Dunning, supra,* was a case in which the doctrine of
estoppel was properly applied, but there is nothing in
the case at bar which would justify a resort to that
doctrine to prevent the widow of Benjamin Gragg
from recovering her homestead in the premises in
question. * * "

The case of *Seek* v. *Haynes,* 68 Mo. 13, is one
in which the widow caused her dower to be assigned
and accepted the assignment, but being ignorant of her
right to a homestead, did not then claim it. She
was administratrix of her husband's estate and
procured from the probate court an order for the
sale of all the lands of the estate, but no sale was
ever made. The court, at page 17 of the opinion,
said:

" * * It is evident, * * that the trial court re-
garded the plaintiff, under the circumstances, as
estopped to claim, or else had waived her homestead
right.

"Neither theory was correct. She could not waive
that of which she was ignorant, nor could she be
estopped where her course of conduct had led no one
to change his condition to his prejudice. If the
contemplated sale of the real estate had taken place,
and a creditor had bought the land, perhaps a dif-

ferent question would be presented; one not necessary to be now considered."

9. Before the waiver of a legal right results, "there must be both knowledge of the existence of the right and an intention to relinquish it": *Fairview R. R. Co.* v. *Spillman,* 23 Or. 587–592 (32 Pac. 688), *Parker* v. *Hood River;* 81 Or. 707–710 (160 Pac. 1158), and 27 R. C. L., pp. 908–910.

10. Where the law entitles a party to two rights, one of which is clearly intended as a substitute for the other, such party is compelled to elect or choose one of such rights, he cannot have both: *Norwood* v. *Lassiter,* 132 N. C. 52 (43 S. E. 509, 510); *Gilman* v. *Gilman,* 54 Me. 453, 458; *Salentine* v. *Mutual Ben. Life Ins. Co.,* 79 Wis. 580 (48 N. W. 855, 856, 12 L. R. A. 690); *Van Steenwyck* v. *Washburn,* 59 Wis. 483 (17 N. W. 289, 293, 48 Am. Rep. 532).

" 'Election is the obligation imposed on a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both.' " Words & Phrases, First Series, pp. 2336, 2337; Second Series, pp. 233, 234.

11. The doctrine of election

"depends not upon technical rules, but upon principles of equity and justice, and upon actual intention. An election made in ignorance of material facts is, of course, not binding, when no other person's rights have been affected thereby. So if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed." *Watson* v. *Watson,* 128 Mass. 152.

12, 13. The estate in fee simple which the widow might elect to take in lieu of dower, under Chapter 331,

Laws of 1917, was not intended as a substitute for the widow's right given by Section 1234, Or. L., to have the exempt property of the estate set apart to her. The homestead is restricted to one particular parcel of real property, while the right given by the 1917 statute, applies to all the parcels of real property of an estate, however numerous. The two rights mentioned are not alternatives or substitutes, consequently the doctrine of election does not apply in respect thereto. If it did, still no election would be presumed in view of appellant's ignorance of her right to a homestead and absence of intention upon her part to relinquish the same, no rights of third parties having intervened.

Appellant is entitled to have set apart to her a homestead in the real property of her deceased husband. Accordingly the order and decree of the Circuit Court is reversed and the cause is remanded, with directions to the Circuit Court to make an order setting apart to appellant, the real property in question, as exempt property of the estate of Henry Iltz, deceased.      REVERSED AND REMANDED.

---

Reversed and remanded on rehearing April 27, 1922.

## ON REHEARING.

(206 Pac. 550.)

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Richards & Richards,* with an oral argument by *Mr. Oren R. Richards.*

For respondent there was a brief over the names of *Mr. M. K. Holland, Messrs. Carey & Kerr* and *Mr. Omar C. Spencer,* with an oral argument by *Mr. Holland.*

RAND, J.—14. Since the rendition of the former opinion, in which the writer did not participate, a rehearing has been had, and we have had the benefit of able and exhaustive arguments of counsel and of the briefs filed by the parties and of others who appeared as *amici curiae.* We are, however, compelled to adhere to our former decision for the reasons hereinafter stated, as well as for those stated in the former opinion.

Henry Iltz, the original owner of the homestead involved here, died on the 31st of December, 1918, before the enactment of the 1919 Homestead Exemption Law, and at a time when by the statute of this state, a homestead was made exempt from execution, and no law, except Section 1234, provided for its disposal upon the death of the owner. At the time of his death, the Homestead Exemption Statute, Laws of 1893, page 93, as amended by the Laws of 1905, Chapter 221, comprising Sections 221–226, L. O. L., was in full force and effect. This statute was construed by this court in *Mansfield* v. *Hill,* 56 Or. 400 (107 Pac. 471, 108 Pac. 1007), and it was there held that this law was a statute of exemption only, and contained no other elements, and that a homestead is purely statutory, and gives no greater right or estate than the statute itself creates. The construction so placed upon this statute has never been questioned in any subsequent decision of this court.

At the time Henry Iltz died, Section 1234, L. O. L., read as follows:

"Upon the filing of the inventory, the court or judge thereof shall make an order, setting apart, for the widow or minor children of the deceased, if any, all the property of the estate by law exempt from execution. The property thus set apart, if there be

a widow, is her property, to be used or expended by her in the maintenance of herself and minor children, if any; or if there be no widow, it is the property of the minor child; or if more than one, of the minor children in equal shares, to be used or expended in the nurture and education of such child or children, by the guardian thereof, as the law directs.''

This section contains no reference, either general or particular, to any other statute or part of a statute, either by referring to its title, date of enactment, section number, or otherwise. If it had contained such reference, its effect would have been the same as if the provisions of such statute had been incorporated in, and made a part of the statute. In such a case it would not embrace or include any additional property which subsequently should by law become exempt from execution, and the operation of the statute would be confined to that property only which was exempt from execution on the date of its enactment. As it did not have the effect of incorporating within itself, as if expressed therein, the provisions of any particular section of the statute, the effect of Section 1234 was to adopt the provisions of all statutes relating to exemptions and defining exempt property as from time to time such statutes should be enacted. Section 1234 therefore embraced within its operation all property of every nature, character and description which, at the time of its application, was by law exempt from execution, unless the disposal of such property was controlled by some other statute. For this reason, under the well-established and apparently universal rule of statutory construction, in *Wycoff* v. *Snapp,* 72 Or. 234 (143 Pac. 902), and *In re Frizell's Estate,* 95 Or. 681 (188 Pac. 707), Section 1234 was held to embrace within its operation all property which by

law was exempt from execution at the time the exigency for its application arose. The rule governing the construction of such a statute is stated by the author of Lewis' Suth. Stat. Const., § 405, as follows:

"The reference in such case means the law as it exists from time to time or at the time the exigency arises to which the law is to be applied."

The author quotes from *Culver* v. *People,* 161 Ill. 89, 97 (43 N. E. 812), as follows:

"Where, however, the adopting statute makes no reference to any particular act by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including, not only the law in force at the date of the adopting act, but also the law in force when action is taken, or proceedings are resorted to."

and also from the decisions of the Supreme Court of Missouri, as follows:

"But when the subsequent statute, being a general one, does not refer specifically to a former statute for the rule of procedure to be followed, but generally to the established law, by some such expression as 'the same as is provided for by law' in given cases, then the act becomes a rule for future conduct to be found when needed by reference to the law governing such cases at the time when the rule is invoked." *Gaston* v. *Lamkin,* 115 Mo. 20, 33 (21 S. W. 1100); 2 Lewis' Suth. Stat. Const., § 405.

The court said, in *Ramish* v. *Hartwell,* 126 Cal. 443, 446, 447 (58 Pac. 920, 921):

"It is a rule of statutory construction that the adoption in one statute, for the purpose of carrying its provisions into effect, of the provisions of another statute by reference thereto, does not include subsequent modifications of these provisions in the statute referred to, unless a clear intent to do so is

expressed. This rule is subject to a qualified exception in cases of the adoption into a special act of the provisions of the law then in force by virtue of general laws. In such cases, subsequent modifications of the general law will be deemed to be within the intent of such adoption, so far as they are consistent with the purposes of the particular act." (See *Kirk* v. *Rhoades,* 46 Cal. 403.)

This rule in its application to Section 1234, L. O. L., was followed by this court in *Wycoff* v. *Snapp,* 72 Or. 234 (143 Pac. 902); *In re Frizzell's Estate,* 95 Or. 681 (188 Pac. 707). See, also, *State* v. *Ganong,* 93 Or. 440, 444, 445, 453 (184 Pac. 233).

As Section 1234 contained no provision which limited its application to any particular class or character of exempt property, but in express terms applied generally to all kinds of exempt property, and as neither the original Homestead Exemption Law nor any statute then in force, except Section 1234, controlled what disposition should be made of a homestead upon the death of its owner, such homestead being exempt, the court was compelled in *Wycoff* v. *Snapp, supra,* and *In re Frizzell's Estate, supra,* to give effect to the express provisions of Section 1234, and to apply to those cases the rule of statutory construction above referred to. For this reason, the court in each of those cases correctly held that the homestead there involved must be set apart to the widow as her separate property, as provided by Section 1234, L. O. L.

The construction placed upon the Homestead Exemption Act of 1893, and upon Section 1234, L. O. L., by the decisions of this court in *Mansfield* v. *Hill, supra; Wycoff* v. *Snapp, supra,* and *In re Frizzell's Estate, supra,* has become the settled law of this state. The law, as settled, has become a rule of

property, and title to property has become vested in reliance thereon. If a different rule should now be established in cases where the owners of homesteads died before the Homestead Exemption Law of 1893 was repealed, it would inevitably result in loss and detriment to those who purchased such homesteads in reliance upon the law as so settled. Under the rule of *stare decisis,* where the law has become settled as a rule of property, and titles have become vested on the strength of it, it forms a precedent which ought not to be departed from unless the continued application of the rule would result in greater hardship than would result from the change of the rule.

15. The title of the Homestead Exemption Law of 1893 reads as follows: "To exempt homesteads from attachment and judicial sale." By Article IV, Section 20, of the Organic Act, "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title thereof." It is contended that if the intent of the legislature in enacting the Homestead Exemption Law of 1893 was to amend the law of descent, and to vest the title to an exempt homestead in the widow rather than in the heirs, the subject of the act is not expressed in the title. This contention is without merit, because the Homestead Exemption Law of 1893 operated to exempt homesteads from attachment and judicial sale, and nothing more: *Mansfield* v. *Hill, supra.* That being so, the effect which the provisions of some other statute might have upon such homestead after it became exempt from execution was not within the purview of the Homestead Exemption Act of 1893, nor was it necessary for any reference to be made in the title of the act to the effect which some other statute might have

upon such homestead after it became exempt from execution.

If this case was one of first impression, we would be at liberty to place our own construction upon Section 226, L. O. L., but regardless of what construction we might in such case place upon that section, and what importance we might attach to the word "descend" as used therein, we are bound by the former decisions of this court. There must be a finality to judicial decisions. If, every time the personnel of this court changes, the settled rules of law are to be changed according to the individual judgment of its members upon questions not free from doubt, and as to which different opinions may exist, the ends of justice would be defeated and that certainty of the law, without which no person can safely transact business or acquire property, would be destroyed.

In order that there may be no misunderstanding of the effect to be given to this decision, we hold and decide that the doctrine announced and followed in the cases of *Wycoff* v. *Snapp* and *In re Frizzell's Estate,* should be applied in all cases where the owner of an exempt homestead died before the Homestead Exemption Law of 1893 was repealed, and the present Homestead Exemption Law was enacted.

For the reasons stated, the order and decree of the Circuit Court is reversed and the cause is remanded, with directions to the Circuit Court to make an order setting apart to appellant the real property in question, as exempt property of the estate of Henry Iltz, deceased.                    REVERSED AND REMANDED.

BURNETT, C. J., Dissenting.—At no time has the homestead been absolutely exempt from execution

under any law enacted in this state. On the contrary, in all the legislation on that subject the land itself could be sold on execution after an appraisal thereof, the appraised value being the upset price at the sale. The statute interposed some obstacles to the sale of a homestead on execution, but none of them is insurmountable. Hence the homestead is not property exempt from execution within the meaning of Section 1234, Or. L., to be set apart to the widow as her property.

Even under the original statute, it was provided that the homestead should "descend" which clearly takes it out of the operation of Section 1234 after the death of the owner and puts it within the purview of the general statute of descents.

This is the doctrine taught in *Mansfield* v. *Hill,* 56 Or. 400 (107 Pac. 471, 108 Pac. 1007). That case has never been overruled. It is a well-reasoned construction of the provision that the homestead shall descend. The decision is as much a rule of property as any other and in case of conflict among the precedents it is the duty of the court to decide between them and announce the true rule.

It is illogical to say in one breath that "descend" must be disregarded in the original statute and in the next give it the effect in the new enactment to pass the homestead to the children to the exclusion of the surviving spouse.

For these reasons I dissent from the conclusion reached in the opinion of Mr. Justice RAND.