Submitted on briefs May 15, affirmed June 12, 1923.

## GLOVER *v.* GLOVER ET AL.

(215 Pac. 990.)

**Wills—Under Facts Devisee Held to have No Cause of Action to be
Compensated as a Disappointed Beneficiary.**

Where, by will showing intention not to treat his heirs equally,
testator devised his land by unequal specific parts to certain chil-
dren, and to his widow, their mother, bequeathed all his personal
property, and gave her a life estate in all the real estate, and she
elected to take against the will and to receive as her individual
property a homestead of twenty acres (Sections 221, 222, Or. L.),
and it was set off to her, and the devisees went into possession
of the other land, the remainders being vested in possession by the
renunciation, and the personal property was administered and dis-
tributed to the heirs, and the estate closed, one of the two from
whose devises the twenty acres were taken had, on death of the

---

Acceleration of remainder by widow's renunciation of life es-
tate, see notes in **Ann. Cas.** 1913E, 416; **Ann. Cas.** 1915A, 1227;
**Ann. Cas.** 1918C, 412; 18 **L. R. A.** (**N. S.**) 272; **L. R. A.** 1915A,
671; **L. R. A.** 1918B, 64.

Compensation of legatees disappointed by another's election
against the will, see notes in **Ann. Cas.** 1914E, 416; **Ann. Cas.**
1915A, 1227; **Ann. Cas.** 1918C, 412; 5 **A. L. R.** 1628; 13 **A. L. R.**
939.

widow intestate, no cause of action against the other heirs to be compensated as a disappointed beneficiary by having the part of the homestead taken from his devise decreed to him, or by sequestration of the value of the estate willed to and rejected by the widow with contribution in case of its insufficiency by the other heirs.

This is an appeal by plaintiff from a judgment sustaining a demurrer to a bill in equity filed on November 19, 1920, in a suit wherein he makes his brothers, sisters, nephews and nieces defendants.

Philip Glover died in Marion County, Oregon, on July 8, 1917, being then the owner of a donation land claim consisting of 317 acres, situate near Sublimity, in Marion County, Oregon. At the time of his death his next of kin and heirs at law were Delilah Glover, widow, Frank Glover, Henry Glover, John P. Glover, Arthur Glover, George Glover, sons, Amelia G. Conick and Ellen G. Lambert, daughters, and Lewis Loomis, Amelia Rankin, Eugene Loomis, Florence Graham and Chester Loomis, grandchildren, they being children of Louisa J. Loomis, a deceased daughter of decedent.

On July 16, 1917, the last will and testament of Philip Glover was admitted to probate. By that instrument the testator bequeathed to the children of his deceased daughter the sum of $5. To his son Henry Glover he bequeathed the sum of $100. His donation land claim he devised as follows: To Frank Glover, 39.04 acres; to Arthur Glover, 40.15 acres; to John P. Glover, 39.16 acres; to Amelia G. Conick, 40.20 acres; to Ellen G. Lambert, 60 acres; to George Glover, 100 acres; the foregoing devises being conditioned that each devisee should pay to Henry Glover $100 in cash. To Delilah Glover he bequeathed all of his personal property and he gave to her a life estate in the whole of his real property.

The complaint avers that immediately after the probate of the will of Philip Glover his widow elected

to reject the provisions of the will in her favor; that she filed in the probate court a petition in which she alleges that she had elected to claim 20 acres of the devised lands immediately surrounding the buildings on the donation land claim of Philip Glover, as an exempt homestead, and prayed that the lands thus claimed be surveyed and set off as her individual property; that on January 26, 1918, an order was entered setting off 20 acres to Delilah Glover, as her individual property. The complaint further avers that the homestead, as surveyed and set off, took from the 100-acre devise to plaintiff 6½ acres, and from the 60-acre devise to Ellen G. Lambert 13½ acres. It is further alleged that in March, 1920, Delilah Glover died intestate, leaving as her heirs at law the parties to this litigation. The plaintiff prays a decree of the court, entitling him to compensation as a disappointed beneficiary under the will herein described for the loss from his devise of the 6½ acres set off as a part of the homestead to his mother,—

"and that plaintiff be so compensated by decree to him of the ownership of said 6½ acres, or by sequestration of the value of the estate willed to said Delilah Glover and rejected by her, and that in the event such estate is insufficient, the defendants be required to contribute the deficiency *pro rata*,"

and for further relief.

To this complaint the defendants demurred, upon the ground of the failure of the complaint to state facts sufficient to constitute a cause of suit, and on the further ground that "this court has no jurisdiction of the subject matter."

From the ruling of the court sustaining the demurrer, the plaintiff appeals.    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Smith & Shields* and *Messrs. McNary, McNary & Keyes* and *Mr. E. M. Page.*

For respondents there was a brief over the name of *Mr. Walter C. Winslow.*

BROWN, J.—This lawsuit arises out of the widow's rejection of her husband's will and the enforcement of her legal rights to the family homestead.

The plaintiff asserts that the donor intended equality. "Equality is equity." However, it was the testator's privilege to say what, if any, portion of his property should be given to the plaintiff.

In the case at bar, the will shows on its face that the testator did not intend to treat his heirs at law equally. Moreover, the dissatisfied plaintiff seems to have been favored by his father's will, above all others. To his grandchildren, the children of his deceased daughter, Louisa J. Loomis, the testator gave $5. To Henry Glover, he bequeathed $100, and provided that each of those to whom he devised lands should pay to his son Henry the sum of $100. To Frank Glover, Arthur Glover and John P. Glover, sons, and to Amelia G. Conick, a daughter, he devised tracts of land consisting of about 40 acres of his donation land claim. To his daughter Ellen G. Lambert, he devised a tract containing 60 acres. On this tract of land was situate the dwelling-house in which the donor and his wife resided. It was a part of the family homestead, and from this tract the greater portion of the homestead was carved. To George Glover, plaintiff herein, the testator devised 100 acres of land, and from this tract 6½ acres of the homestead were taken.

The complaint discloses the action of the widow in the probate court in the matter of her election. It shows that W. J. Culver was the duly appointed, qualified and acting executor of the estate of Philip Glover; that he filed his final account and published notice, as required by law, of a hearing thereof; that an order was made on September 23, 1920, allowing his account and closing the affairs of the estate, and that the County Court made an order distributing to the heirs at law of Philip Glover the personal property rejected by the widow.

In the construction of this will, it is our task to ascertain the testator's chief intent and to execute that intent with a minimum disturbance of the general plan outlined by his written will: *Disston's Estate,* 257 Pa. 537 (101 Atl. 804, L. R. A. 1918B, 62).

A statutory homestead must be the actual abode of the family, or some member thereof, and, in no instance, shall be reduced to less than 20 acres if not located in a town or city or laid off into blocks: Sections 221, 222, L. O. L.

The widow's right to have the 20 acres described in the complaint set apart to her under the statute is paramount to the right of the testator to dispose of the same by will: *Wycoff* v. *Snapp,* 72 Or. 234 (143 Pac. 902); *In re Frizzell's Estate,* 95 Or. 681 (188 Pac. 707); *Leet* v. *Barr et al.,* 104 Or. 32 (202 Pac. 414, 206 Pac. 548).

In all cases it is presumed that a testator intends to devise his own lands alone. However, in the case at bar, Philip Glover, by express language, undertook to dispose of all of his real property, including the family homestead, as well as his wife's dower.

A well supported general rule in the construction of the testator's will is that he is presumed to know

the law, and that his widow might lawfully exercise her right to elect to take against his will: 28 R. C. L., § 193; *Disston's Estate, supra; Vance's Estate,* 141 Pa. 201, 209 (21 Atl. 643, 23 Am. St. Rep. 267, 12 L. R. A. 227); *Crocker* v. *Crocker,* 230 Mass. 478 (120 N. E. 110, 5 A. L. R. 1617); *Upham* v. *Emerson,* 119 Mass. 509, 513; *Sawyer* v. *Freeman,* 161 Mass. 543, 547 (37 N. E. 942).

The interest which a widow takes in the estate of her deceased husband is not in the nature of a debt against the estate: *Dunshee* v. *Dunshee,* 263 Ill. 188 (104 N. E. 1100).

This is not a case wherein the property given to the widow by the testator's will has been used to compensate disappointed beneficiaries whose gifts were diminished or extinguished in order to satisfy the widow's rights to a homestead and who, by reason thereof, are calling upon others taking similar interests to contribute.

We held, in *Bristow* v. *Jennings,* 105 Or. 1 (207 Pac. 863), that—

"If the widow elects to take under the will, she relinquishes and waives her dower right, and, on the other hand, if she elects to take the right given her by the statute, thereby renouncing the will, she retains the benefits arising out of those rights, and the property donated to her under the will is applied to compensate the beneficiaries under the will who may be disappointed as the result of her election: 1 Pomeroy's Eq. Juris. (4 ed.), §§ 468, 469, 517."

In *Pace* v. *Pace,* 271 Ill. 114 (110 N. E. 878), the court said:

"A provision in favor of a widow is in legal effect only an offer on the part of the testator to purchase her statutory interest in the estate for the benefit of the estate, and where she renounces the will and

takes under the statute she simply refuses to accept such offer. * * Where a devisee having the right of election exercises such right, a court of equity will take hold of that which is relinquished to compensate, as far as may be, the disappointed devisees and apply it in place of the devise or devises defeated: *Wilbanks* v. *Wilbanks*, 18 Ill. 17; *Wakefield* v. *Wakefield*, 256 Ill. 296 (100 N. E. 275, 30 Ann. Cas. 1913E, 414); 1 Pomeroy's Eq. Juris., § 517; 11 Am. & Eng. Ency. of Law (2 ed.), 115.''

In an interesting note by Mr. Henry P. Farnham, Associate Editor, 14 L. R. A., p. 293, it is said:

''The usual effect of the widow's rejection of provisions made for her in the will in lieu of her dower rights, and her enforcement of the latter, is to disappoint legatees to whom the property to which such rights have attached has been bequeathed. This is manifestly a hardship and the courts have attempted to make it as light as possible by using the property rejected by the widow for the benefit of the disappointed legatee. And now the principle of compensation is applied in the case of election against the will by the widow equally with that of a similar election by any other devisee (citing authorities). If the widow elects to take against the will, she must surrender to the disappointed devisees all the bequests under the will, or their value, and chancery will sequester such property for the purpose of the will (citation). Equity treats the substituted devises and bequests to the wife as a trust for the benefit of the disappointed claimants to the amount of their interest therein, and the court will assume jurisdiction and sequester the benefit intended for the refusing wife in order to secure compensation to those whom her election disappoints.''

The editor says that there are cases opposed to that line of authority. The case of *Gainer* v. *Gates*, 73 Iowa, 149 (34 N. W. 798), he calls ''peculiar.'' In that case, the widow was given a life estate in all

the testator's property, with the devise of the homestead to Gainer, the plaintiff, and legacies to divers legatees. The widow elected to take against the will. There is no discussion by the court relating to the use of the life estate renounced by the widow, for the benefit of the disappointed devisee of the homestead. But the court decided that the testator must have known that he could not dispose of the homestead by will without the wife's consent, and must have intended that in the event she concluded to take the homestead, it was not to go to the devisee, and consequently that he took nothing under the will.

The plaintiff asserts in his complaint that by reason of the election of the widow to renounce her life estate devised to her by Philip Glover in the donation land claim described in his will, the devisees under that will were thereby enabled to come into immediate possession of the lands so devised to them, and obtained the benefit of the life estate of the widow in each of such tracts of land. This benefit applies not only to the devises of the smaller tracts to the brothers and sisters of plaintiff, but to the devise to plaintiff, consisting of about one hundred acres, as well.

It is a general rule, supported by the decisions, that the renunciation by the widow of a life estate bequeathed to her is equivalent to its termination by the widow's death so far as the vesting in possession of the remainder is concerned, unless a contrary intention of the testator is evidenced by the will: *Rose* v. *Rose,* 126 Miss. 114 (88 South. 513); *Craig* v. *Craig,* 140 Md. 322 (117 Atl. 756).

As stated in *Randall* v. *Randall,* 85 Md. 439 (37 Atl. 210):

"The rule followed by both the English and American courts is, that a widow's renunciation and election to take as against the will is equivalent to her death, unless it contravenes some manifest intention of the testator as expressed by the will."

In the case of *Kern* v. *Kern,* 293 Ill. 238 (127 N. E. 396), the court said:

"It has long been settled in this court that where a widow who has been given a life estate under a will renounces and elects to take her dower or the statutory allowance instead, such renunciation works an extinguishment of her life estate and accelerates the rights of the remaindermen: *Slocum* v. *Hagaman,* 176 Ill. 533 (52 N. E. 332); *Wakefield* v. *Wakefield,* 256 Ill. 296 (100 N. E. 275, Ann. Cas. 1913E, 414), and cases cited; *Northern Trust Co.* v. *Wheaton,* 249 Ill. 606 (94 N. E. 980, 34 L. R. A. (N. S.) 1150); *Sherman* v. *Flack,* 283 Ill. 457 (119 N. E. 293)."

To the same effect are *Sellick* v. *Sellick,* 207 Mich. 194 (173 N. W. 609, 5 A. L. R. 1621); *In re Disston's Estate,* 257 Pa. 537 (101 Atl. 804, L. R. A. 1918B, 62); *Holdren* v. *Holdren,* 78 Ohio, 276 (85 N. E. 537, 18 L. R. A. (N. S.) 272, and note); *Adams* v. *Legree et al.,* 111 Me. 302 (89 Atl. 63); 4 Schouler on Wills, Executors and Administrators (4 ed.), § 3212. However,—

"Where this renunciation (by the widow) results to the disadvantage of other legatees, the remainders are not accelerated but the property during life of the widow used to satisfy the disappointed legatees." 4 Schouler on Wills, Executors and Administrators (4 ed.), § 3212.

To like effect see 2 Underhill on the Law of Wills, § 729; 1 Pomeroy's Eq. Juris. (4 ed.), § 517.

The plaintiff made no effort to have the property renounced by the widow sequestered for the purpose of compensating him for his alleged loss. When she

made her election, the devisees went into possession of the land devised to each of them respectively, and, upon the final settlement of the estate, received the moneys renounced by the widow as their distributive shares of the estate of Philip Glover.

The allegations of the complaint do not state a cause of suit. This case is affirmed.          AFFIRMED.

---

Argued May 28, motion to retax costs denied June 12, 1923.
See 106 Or., p. 41, for opinion on merits.